In re Margaret Joyce LaFLAMME n/k/a Margaret Joyce Keilig, Debtor.

Margaret Joyce KEILIG f/k/a Margaret Joyce LaFlamme, Plaintiff,

v.

MASSACHUSETTS HIGHER EDUCATION ASSISTANCE CORPORATION d/b/a American Student Assistance, and Student Loan Marketing Association d/b/a Sallie Mae, Defendants.

Bankruptcy No. 92–501–JEY.
Adv. No. 95–1071.

United States Bankruptcy Court,
D. New Hampshire.

Oct. 31, 1995.

Grenville Clark, Gray, Wendell & Clark, PC, Manchester, NH, for Margaret Joyce Keilig/Plaintiff.

John Ullian, Law Office of L. Ullian & Assoc., Braintree, MA, for Mass. Higher Education Assistance Corp./Defendant.

Daniel C. Proctor, Concord, NH, for Student Loan Marketing Assoc./Intervenor Defendant.

## OPINION

JAMES E. YACOS, Chief Judge.

This adversary proceeding came before the Court on October 2, 1995 for Trial on a Complaint seeking discharge of student loans pursuant to 11 U.S.C. § 523(a)(8). During the trial, the Court considered two Motions for (Partial) Summary Judgment, filed by defendant Massachusetts Higher Education Assistance Corporation d/b/a American Student Assistance ("ASA") (Ct.Doc. Nos. 18 and 19), and joined by defendant Student Loan Marketing Association d/b/a Sallie Mae (Ct.Doc. Nos. 21 and 22). The Court also considered plaintiff's Trial Memorandum filed in response thereto (Ct.Doc. No. 24). The Court announced bench rulings with regard to these motions at the outset of the trial and then proceeded to take evidence with regard to the remaining 11 U.S.C. § 523(a)(8) hardship issue. This Opinion sets forth the Court's findings of fact and conclusions of law as to all matters presented.

Defendants' Motions for (Partial) Summary Judgment present two legal issues. The first issue is whether a loan made to a parent of a student is subject to the provisions of 11 U.S.C. § 523(a)(8), if the loan proceeds were not used by the parent/debtor to finance her own education. The second issue presented is whether a loan originating from a private bank, and guaranteed by a government agency, is subject to the provisions of 11 U.S.C. § 523(a)(8). In accordance with the following, the Court holds that 11 U.S.C. § 523(a)(8) applies to non-student debtors, and that 11 U.S.C. § 523(a)(8) applies to loans obtained from private banks and guaranteed by government agencies.

### Non–Student Borrower

The statute at issue here, 11 U.S.C. § 523(a)(8), provides in pertinent part:

> A discharge ... does not discharge an individual debtor from any debt ... for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless ... excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8)(B).

On the question as to whether section 523(a)(8) applies to a debtor who was not herself a student who used an educational loan, there has been quite a split in authority, as the briefing indicates. The Court has reviewed the cases cited and believes the better view taken is that the provision for nondischargeability of educational loans applies to any party who obtains such a loan, regardless of whether the borrower is a student or not. The only decision on this issue in this circuit is by Judge Feeney of the United States Bankruptcy Court in Boston, Massachusetts. See *In re Flibotte*, Bk. Case No. 92–19655–JNF, *Medford Savings Bank v. Flibotte*, Adv. No. 92–1847, slip op., 1993 WL 816068 (Bankr.D.Mass. July 12, 1993).

The *Flibotte* decision cites the cases decided both ways up to that date, and basically it comes down to whether the Court can read into the statute an exception that literally is not there. The courts that have held the other way argue that, from legislative history, the Congress intended to correct abuses by students who obtain a student loan and then, immediately upon graduating and before trying to work and pay off the loan, go right to bankruptcy court when they have few assets and have not utilized their edu-

cation to produce some income. These courts have determined that such abuse is all that Congress intended to correct. *See, e.g., In re Boylen,* 29 B.R. 924 (Bankr.N.D.Ohio 1983).

The problem with the position taken in *Boylen* and progeny is that Congress did not use words to restrict the application of the statute to just students taking out the loans directly. The statutory language is broad enough to encompass anyone that obtains an educational loan as defined in that statute. The opinion that the statute does not apply to a nonstudent is premised upon legislative history and, in effect, reads an exception into the statute, and the cases that construed the statute to apply to only students are mostly early or mid–1980's cases.

The recent trend of the United States Supreme Court has clearly been to restrict courts to the literal language of a statute, unless a court can find that the literal interpretation is absurd in its result or that there are grounds for applying some well-defined exception to the statutory interpretation principle of applying the plain meaning of a statute. It is this Court's opinion that the current justices of the United States Supreme Court would not adhere to those cases that have read into 11 U.S.C. § 523(a)(8) an exception to exclude and protect a comaker or a parent, and this Court considers the better, recent view is that expressed in the cases cited in *In re Flibotte, supra,* p. 2, that find that this exclusion from discharge applies to a debtor who is a parent (and nonstudent) as well as a debtor that might be the student that actually went to college.

There is only one decision by a Court of Appeals, *see In re Pelkowski,* 990 F.2d 737 (3rd Cir.1993), and only one decision by a United States District Court, *see In re Wilcon,* 143 B.R. 4 (D.Mass.1992), addressing this issue. Both the Circuit Court of Appeals and the District Court held that 11 U.S.C. § 523(a)(8) has no exception, and that as long as the loan is an educational loan, as otherwise defined under the statute, a debtor is subject to the provisions of nondischargeability under 11 U.S.C. § 532(a)(8). In accordance with the foregoing, the Court will follow *In re Pelkowski,* 990 F.2d 737 (3rd Cir.

1993), *In re Flibotte,* Bk. Case No. 92–19655–JNF, *Medford Savings Bank v. Flibotte,* Adv. No. 92–1847, slip op., 1993 WL 816068 (Bankr.D.Mass. July 12, 1993), and the line of decisions following same.

### Loans Originate from Private Bank

■ The briefing by the parties raises a separate question of whether the loans in question were "made, insured or guaranteed by a governmental unit" or "made under any program funded in whole or in part by a governmental unit or non-profit institution" such that they are subject to the provisions of 11 U.S.C. § 523(a)(8). The plaintiff contends that the loans were originally made and funded by a private bank, the Bank of New England, N.A., and therefore not "made" by a "governmental unit". Plaintiff further contends that defendants have produced no evidence that the loans are "insured or guaranteed" by defendants, and that defendants have produced no evidence that they are a "governmental unit or non-profit institution". Defendant Massachusetts Higher Education Assistance Corporation d/b/a American Student Assistance ("ASA") conceded that the loans originated from a private bank through a funding program called "Parent Plus Loans". However, ASA observed that section 523(a)(8) makes no reference or distinction based upon the point of origin of a loan and, therefore, the fact that a government-guaranteed loan originates from a private bank, as is the case with most student loans, is irrelevant.

ASA entered into an agreement with the United States Commission of Education in 1966 whereby ASA is a guaranty agency for various student loans that are funded under the Higher Education Act of 1965, Title IV Part B, Pub.L. No. 89–329, 20 U.S.C. § 1071 et seq. (1976). *See* Agreement between Massachusetts Higher Education Assistance Corporation and U.S. Commissioner of Education (August 2, 1966) (Exhibit "A" to Motion for Partial Judgment on the Pleadings, filed by defendant MHEAC/ASA). "Parent Plus Loans", the type of student loans at issue in this case, are funded under the Higher Education Act of 1965. If a student borrower defaults on a loan, the original lending

bank (in this case, the Bank of New England, N.A.) may assign its rights to the federal guarantor (in this case, MHEAC/ASA by agreement with the U.S. Commission of Education, as referenced above) and be reimbursed. 20 U.S.C. § 1080(a)(b) (1976). The loans are further subject to reinsurance by the federal government under the provisions of the Higher Education Act of 1965.

On that basis alone, the Court determines that these loans are subject to 11 U.S.C. § 523(a)(8). Clear evidence that the loans were subject to a "governmental unit" is the fact proved up at trial that defendant ASA did pay a substantial amount on its guaranty of the loans to Education Loan Services Incorporated, the servicing agent for Fleet Bank, which had taken assignment of three of the four promissory notes from the originating bank, Bank of New England, N.A.

In accordance with the foregoing, defendants' Motions for (Partial) Summary Judgment are granted and this debtor therefore must establish grounds for dischargeability in accordance with the provisions of 11 U.S.C. § 523(a)(8), which basically raises the hardship question on the facts of this case.

### Undue Hardship

■ The parties presented a full trial on the merits regarding the hardship to plaintiff in paying off the student loans in accordance with the provisions of 11 U.S.C. § 523(a)(8) and caselaw decided thereunder. At the conclusion of the trial, the Court, after hearing testimony of witnesses, receiving documentary evidence, and considering the oral arguments by the parties, dictated findings of fact and rulings of law into the record, incorporated herein by reference and set forth in pertinent part below.

The issue here is whether the loans in question are nondischargeable by virtue of the special provision of section 523(a)(8) which renders educational loans nondischargeable except upon a showing of "undue hardship" or a showing that the loans "first became due more than 7 years" before the bankruptcy petition was filed.[1]

The defendants have proven and the plaintiff has admitted that she obtained four $4,000 loans for the use of her children in going to two different colleges in 1990 and 1991, and that plaintiff requested deferment of the monthly payment period until after the children graduated from college, which was granted. However, in February of 1992, the debtor and her then husband filed a chapter 13 proceeding in this Court. Thereafter Philip LaFlamme was dismissed from this case on November 17, 1994 after the parties had divorced. Margaret LaFlamme continued with her plan and the case remains pending as a confirmed chapter 13 proceeding.

■ The evidence in this case presents a rather forlorn and I must say depressing picture of a debtor facing substantial obligations with no substantial income. That of course is not unusual in bankruptcy cases and the Courts have consistently ruled that in 11 U.S.C. § 523(a)(8) the fact that the debtor has financial problems is not by itself undue hardship under the statutory standard. As this Court and other courts have ruled, it must be something extraordinary and exceptional and generally indicate a hopelessness for the indefinite future as to any possibility of repayment. *See, e.g., In re Barrows,* 182 B.R. 640 (Bankr.D.N.H.1994); *see also In re Garrett,* 180 B.R. 358 (Bankr. D.N.H.1995). Accordingly, it is necessary for the Court to look into the specific facts of a particular case and apply those standards in a way that is consistent with the congressional intent in singling out education loans as debts that are not as easy to discharge as other debts.

In the present case, the debtor was divorced in February of 1993 from her husband and at that time he was ordered to pay $150 alimony. He was also ordered to pay these student loans that were obtained by the debtor on her signature alone since her husband had defaulted in the past on a student loan and would not be qualified himself to obtain such a loan. These student loans benefitted his children as well as Margaret's children.

---

1. There is no issue in the present case as to the "seven year" proviso since the *earliest* loan

was obtained in 1991 and the bankruptcy case was filed in 1992.

There is no question that the monies in question were used for the educational expenses of the two children. The debtor received alimony, but her last alimony was received in August of 1994 and her ex-husband has been changing jobs or been unemployed at various times. The debtor has had trouble trying to keep track of her ex-husband. He works generally as a service manager for auto dealerships and has been able to earn some $66,000 a year in recent years at that type of work. He has remarried and apparently has new children and for whatever reason has not been making alimony payments since August of 1994.

The debtor has taken no action to bring her ex-husband into the family court on a contempt motion to force him to make the alimony payments and the educational loan payments. She indicated generally she thinks it is futile and did not want to or could not pay the legal expenses. I take note that debtor is paying $50 a month for the litigation in this present adversary proceeding, and it is not clear to me that she could not take some effective action, even if she had to hire an attorney for that purpose. Moreover, I am not convinced that the family court would require an attorney's representation in such situations and I believe they do make available, either through themselves or through some state agency, help in bringing to account what are now referred to in the newspapers as "Dead Beat Dads". What used to be true about the futility of going after ex-husbands for divorce decree obligations is not as true as it might have once been, particularly in this State.

The debtor has employed informally a bill collector, who operates on a "moonlighting" basis, to try to trace the ex-husband and collect these monies. The debtor last knew the address of the ex-husband in January of 1995, at which time he represented that he was unemployed. Whether the ex-husband is or is not unemployed is not really established in this record and, judging by his track record of being able to shift from dealership to dealership, I suspect that he is out there somewhere making comparable monies.

The debtor has had a hard row to hoe here for many reasons, not the least of which is that her ex-husband was convicted in federal court of theft back in 1982 and was on probation for a year, during which time she had to support the family. Then, of course, the divorce was a traumatic event for this debtor, and the fact that her two children are estranged from her has left her essentially alone against the world. She has consulted a psychologist for depression resulting from her situation.

The psychologist herself was not called as a witness, so I do not have any direct expert testimony as to the medical condition of the debtor. Suffice it to say that I accept the fact that the debtor is rather depressed about the whole situation and is living from paycheck-to-paycheck in a situation in which she has to minimize her living expenses to some degree. Somehow she makes it month-to-month. I am impressed that she is able to handle these problems, which might have bowed down a person with lesser stamina and resolve. To make ends meet the debtor also takes few vacation days per year and cashes in the other days to which she is entitled to help her with expenses.

The debtor's employment history in recent years has shown that she earned about $26,000 in 1991; $31,080 in 1992, which included alimony payments; $35,632 in 1993, which also included alimony payments; and $33,512 in 1994, which included alimony payments, but only about a half of what she had received in prior years. The debtor's alimony entitlement under the divorce decree is $150 per week or $3,900 per year. Her current gross income is $1,022 biweekly or $29,174 per year.

As previously indicated, the loans never became due, on a current payment basis, because they were deferred at the outset pending the children completing their college education. The debtor has never made a payment on any of these educational loans.

The debtor is 48 years of age and is living alone in an apartment for which she pays $660 monthly. She commutes to Nashua, where she works at the St. Joseph Hospital as a licensed practical nurse, and where she has worked for some 17 years. In recent years, the debtor testified that she is limited

to 32 hours a week, because the hospital is cutting expenses and using RNs, etc. so that the LPNs are restricted to 32 hours a week. Debtor is making a monthly car payment of $246 on a Saturn automobile that she purchased approximately three years ago in which there is approximately one year to go on payments. She is paying $50 to Mr. Clark for legal expenses for this litigation in addition to having already paid the legal fees that were incurred with regard to the chapter 13.

The chapter 13 will provide a discharge. The debtor has completed her chapter 13 and will be entitled to a general discharge order relieving herself from the other debts. The debtor accordingly is relieved from other liabilities that she would have had at the time these loans were taken. The debtor pays $50 a month for a tax-sheltered annuity as part of her employment, which I find to be a necessary matter notwithstanding that it is voluntary. She is well-advised to try to provide for her future retirement. I do not find the tax-deferred annuity to be an extravagance. She does pay some $57 I believe per month for a health club and, while this is desirable, it is not normally considered a necessity since people can exercise by jogging or walking or otherwise. She also has a fairly expensive apartment in Manchester and presumably could get by with a lesser apartment since she is living alone.

The defendants have made a point that the debtor could work more hours, but it is apparent that as far as the debtor's hospital employment goes, at least for the foreseeable future as an LPN, she is going to be restricted to 32 hours. She works the 3–11 shift so it is conceivable that she could work some hours on a part-time job for additional income. The debtor's reaction to defendants' suggestion that she work more hours is that she does not have much purpose in life anymore and that she just does not want to do it basically. While I can understand that reaction, considering the debtor's marital history and her history generally, the fact remains that she does have the capability of earning additional income.

This bankruptcy was filed in February 1993 as a chapter 13 proceeding and debtor's ex-husband has been dismissed from it. The ex-husband still remains liable on the divorce obligation, not only for alimony but also for the payment of these student loans, which otherwise might be dischargeable, but here he is liable through the divorce decree. The debtor is not waiving any claims she has against her ex-husband and reserves the right to pursue her ex-husband on a contempt basis or otherwise to have the debts owing under the divorce decree paid.

The defendant MHEAC/ASA has proposed a repayment schedule for its education loan debt which this Court finds, in consideration of all of the foregoing, will not impose an undue hardship upon the debtor within the meaning of section 523(a)(8) of the Bankruptcy Code.

### Conclusion

The Court finds and rules that the loans at issue are subject to 11 U.S.C. § 523(a)(8), notwithstanding that they were taken by a non-student borrower, and notwithstanding that they originally issued from a private bank.

The Court further finds and rules that the student loan obligations presently held by the defendant Massachusetts Higher Education Assistance Foundation d/b/a American Student Assistance are nondischargeable, that the debt owing to that defendant is $15,000, and that debtor shall pay $50.00 per month beginning November 1, 1995 on these loans until her car payments are completed (scheduled to end on August 1, 1997), at which time debtor shall pay $125.00 per month until the loans are paid in full. There shall be no interest on the balance owed to defendant MHEAC/ASA unless debtor defaults on the above-scheduled payments, in which instance interest shall accrue at the rate of ten percent (10%) per annum on the unpaid balance until the missing payment or payments are brought current.

The Court further finds and rules that the defendant Student Loan Marketing Association d/b/a Sallie Mae has failed to prove its case, and the debts owing to it are hereby discharged.

A separate Final Judgment consistent with the findings of fact and conclusions of law set forth in this Opinion shall be entered contemporaneously herewith.

## FINAL JUDGMENT

This proceeding having come before the Court on October 2, 1995 for Trial on a Complaint seeking discharge of student loans pursuant to 11 U.S.C. § 523(a)(8), and the Court having by separate Opinion this date made findings of fact and rulings of law pertinent to defendants' Motions for (Partial) Summary Judgment and the evidence adduced at trial on the hardship factor under 11 U.S.C. § 523(a)(8)(B), it is accordingly,

ORDERED, ADJUDGED and DECREED as follows:

1. This Court has jurisdiction of the subject matter and the parties of this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire", dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

2. Judgment is entered in favor of defendant Massachusetts Higher Education Assistance Corporation d/b/a American Student Assistance as to the portion of the debt owing to them that is deemed nondischargeable, which is $15,000. The plaintiff/debtor shall pay such debt at the rate of $50.00 per month beginning November 1, 1995, and due on the first day of each month thereafter, until plaintiff/debtor's car loan matures and is paid off (currently scheduled to end August 1, 1997), at which time plaintiff/debtor shall pay this debt at the rate of $125.00 per month until the debt is paid in full. No interest shall accrue on this debt unless plaintiff/debtor has failed to make the above-scheduled payments within 15 days of the due date and thereby defaulted, in which instance interest shall accrue at the rate of ten percent (10%) per annum on the unpaid balance until the missing payment or payments are brought current.

3. Judgment is entered for the plaintiff/debtor in regard to defendant Student Loan Marketing Association d/b/a Sallie Mae.

4. This adversary proceeding is closed.

5. Each party shall bear its own fees and costs.

DONE and ORDERED.