In re Marcia O'DONNELL, Debtor.

Marcia O'DONNELL, Plaintiff,

v.

**NEW HAMPSHIRE HIGHER EDUCATION ASSISTANCE FOUNDATION, Defendant.**

Bankruptcy No. 95–1284.
Adv. No. 95–1156.

United States Bankruptcy Court,
D. New Hampshire.

June 25, 1996.

Leonard G. Deming, II, Deming Law Office, P.A., Nashua, NH, for Marcia O'Donnell.

Jeffrey Schreiber, Trustee, Schreiber & Associates, Danvers, MA.

## MEMORANDUM OPINION

JAMES E. YACOS, Chief Judge.

This adversary proceeding came before the Court on June 18, 1996 on a Complaint pursuant to 11 U.S.C. § 523(a)(8) dischargeability issue regarding the plaintiff's contention that student loan debts totaling $43,655.33 as of this date be discharged under that statutory provision under the contention that repayment of that total debt would be an undue hardship. The plaintiff, Marcia O'Donnell, is a woman of 45 years of age who was married in 1970 and divorced in 1980. Since her divorce she has worked at various jobs in computer sales industry. Her highest gross income during a one year period since that time was approximately $80,000. Her income tax returns for 1992 indicate an adjusted gross income of approximately $49,000; In 1993 $51,669; and in 1994 $36,251.

The record indicates that in the last year or so the plaintiff has had to change jobs a

number of times due to declining business by her employers. Her 1995 tax return has not been filed yet but it is fair to conclude that it will also show an income no greater than the 1994 level due to her job changes. Her current employment is with Comp. USA, Inc. which is a public company traded on the New York stock exchange. The company has recently opened a computer store in Nashua, New Hampshire. The plaintiff's position at that company is as an account executive to obtain business by contacting various prospective customers. She is the sole account executive for that store which has some five employees in the "corporate side" seeking contract business and some 70 employees on the "retail side" dealing with customers coming into the store.

The plaintiff started her employment with Comp. USA in February of 1996. She was on a $4,000 a month draw for the first three months with further compensation to be on a straight commission basis computed at 6 percent of gross profits for her sales.

The plaintiff's first month off of the guaranteed draw was May 1996. For that month she earned a gross of $1,969. She expects to soon be earning $2,500 gross per month but it is unclear on this record when she will be able to increase that amount to $4,000 or more per month.

The plaintiff's present employer, Comp. USA is an established company and has various products relating to access to the Internet which is currently a growth area in the computer industry. Accordingly, the Court can and will find from this record that the plaintiff should be able to increase her compensation with sales efforts and the fact that she has demonstrated her capability to sell. However, it is not clear that the plaintiff will be able to receive a guaranteed draw plus commissions with the present company and she is currently looking for other employment that might give her that more stable income stream. She is an employee at will with the present company.

The plaintiff needs only five courses to complete her degree in a bachelor of science in business administration and has been working on her degree off and on up to and including December of 1995. She expects to ultimately receive her degree.

The plaintiff's primary skills are in communication and the ability to learn how to obtain product knowledge to enhance her ability to sell a product. The plaintiff impresses the Court as a rather skilled sales person and presumably should be able to obtain alternative employment if her present employer is not willing to give her a more stable contractual arrangement after she has been with the company long enough to prove that she can produce sales.

The plaintiff's amended bankruptcy schedules I and J show a net monthly income of $1,603 and expenses of $2,508. The net income is the May 1996 net figure taken off her gross income of $1,906. The record however indicates that the plaintiff should shortly be at least at a position of $2,500 gross and not too long after that at least to a position of $2,500 net.

The plaintiff has three children but they are all over 18 and do not live with her nor are they supported by her. The student loans in question were obtained by the debtor for her children's education under the "PLUS" loan program. The fact that the student loans in question were obtained for the children and not for the plaintiff is not relevant under § 523(a)(8).

The plaintiff is a skilled sales person and is quite organized. The Court is able to see her future as perhaps an account executive and/or sales manager if she continues in sales. The Court believes the plaintiff is correct when she states she would like to look at herself as one who could get back to her prior income level in 1980's at sometime in the future.

There are seven loans in question. Under the "PLUS" system the loans should be paid immediately. However, the plaintiff requested immediate deferment and has been filing forms three times a year to show that her children were still in college and requested that deferment should continue. At the time of the bankruptcy filing on May 30, 1995 it is agreed that the loans were still in deferment.

Of the seven loans in question, the plaintiff made the following payments: A loan taken

out in August 1991 of $4,000 she paid 11 payments of approximately $520; one payment of $50 on a July 1992 loan of $4,000; one payment of $33 on an August 1991 $4,000 loan; approximately two payments of $50 were made on a July 1992 $4,000 loan; and with regard to an $8,615 loan taken in October of 1993 and an $8,400 loan in November of 1993 the plaintiff has made no payments and obtained a deferment on those loans as well.

The plaintiff in August of 1994 had a rental property that was producing income which she subsequently sold and obtained a net gain of $7,000. She gave the $7,000 to her father to use as a down payment on a condominium that she is presently living in since she herself could not qualify for a mortgage according to her testimony. The condominium price was $36,000. The plaintiff has been making payments on the condominium since it was purchased. She pays $375 per month on the mortgage (on the condominium titled in her father's name) and $105 for condominium fees, for a total of $480 per month.

There is no indication that the condominium value has declined since the purchase in August of 1994 and presumably has equity of at least $7,000 and perhaps more by virtue of the pay down since that date.

The children for whom the student loans were obtained graduated from their respective schools and are currently employed. A daughter is employed as a Spanish teacher which was her college training. A son is employed but not at the commercial pilot training facility that he entered after graduating from a Hesser College two year program, and presumably when he can afford it will complete the commercial pilot training. The children themselves have direct student loans of approximately $15,000 each.

The plaintiff drives a 1995 Camry which is leased. She pays $275 per month on the lease. The type of vehicle and the lease payment appear appropriate for the type of work the plaintiff does which requires traveling around to prospective customers.

Pursuant to the Court's pretrial Order, the defendant has filed a statement of a proposed payment plan regarding the loan in question which the defendant contends would not create an undue hardship. That payment plan would have the plaintiff pay off the entire loan at the interest rate of 9.065 percent (being the median interest rate of all the notes combined) with payments of $349.75 each for the first five years and payments of $564 monthly for the next ten years. This would require at the plaintiff's age, payments up to age 60 on these student loans.

■ Based on the entire record and the foregoing findings the Court will find and conclude that this plaintiff does have the ability to return to a gross income of approximately $40,000 within the foreseeable future. The Court believes she has the skills and intelligence to advance at her present job or obtain a new job to get to that income level. Her track record in the past supports this; her testimony before this Court impresses the Court that she is an effective sales person that would be a desirable employee; and the Court concludes that the present problems have been due to the temporary changes in the computer industry that have required a lot of companies to readjust to changing conditions. Not all companies have been able to readjust quickly enough and the plaintiff's business prospects have not been such as to sustain her level of income because of that changing situation.[1] The Court believes that in her present employment the plaintiff is positioned in a way that she can produce and either negotiate an appropriate contract or that she has the track record to be employed by a competitor.

■ It is true that the record does indicate that at present she is not capable of doing much more than a wash of her ongoing expenses with no provision for these student loans. That presents the Court with the dilemma that it is often presented with in these cases: "What is to be the Court's decision when it finds that at the moment the

---

1. The whole computer industry is in flux at the moment because of the switch to access to the Internet rather than dedicated service programs. Everybody involved is scrambling at the moment to get a handle on that access to the Internet process and the turmoil that this plaintiff has experienced in the industry is not surprising in those circumstances.

plaintiff can not make the payments but is ultimately convinced that in the foreseeable future she will be able to make the payments.?" As this Court ruled in *LaFlamme*, 188 B.R. 867 (Bankr.D.N.H.1995), and also more particularly as Judge Vaughn has recently ruled in his order in *Richard T. Clark, et al. v. N.J. Higher Education, et al.*, BK No. 95–12144, ADV No. 95–1180, (June 6, 1996), the Court can appropriately react to such a situation by deferring the commencement of payments for an appropriate period.[2] In the present case it is my judgment that payments on these loans should be deferred until January 1, 1997 but should commence at that point with a comparable step provision of five years and ten years as proposed by the defendant in this case unless the parties can agree to a different payout schedule.

The plaintiff in the present case in my judgment has failed to meet her burden of showing that if payments were to commence on January 1, 1997 and under a five and ten year step plan proposed by the defendant would be an undue hardship. That is not to say that if reality changes the situation both the plaintiff and defendant would have to react to that when and if judgment on the nondischarged debt is sought in the state courts and repayment is required.

I should add, as Judge Vaughn pointed out in his opinion in *Valerie Garrett v. N.H. Higher Education*, Bk No. 94–10387, ADV No. 94–1093, 180 B.R. 358 (1995), the test in this area is very strict and you might say harsh but it was intended by Congress to be a test that can only be met if there is true economic inability over the foreseeable future involved. I don't find that to be the case here. I don't believe that under this decision the plaintiff in fact will not be able to preserve a decent standard of living for herself if forced to repay the loans.

While the Court believes that the plaintiff's income will be sufficient for the repayment under the terms offered by the defendant, the Court also takes into account to some extent that on this record that it is expecta-

ble that her father will help her if necessary. The fact is that the father has some $7,000 or more of equity in her condominium that came from her money. The Court believes that judging from his actions so far he would be either willing to help directly or allow that condominium have a second mortgage for equity refinancing to accommodate any temporary problems she might have. The Court also takes into consideration that it is not beyond belief that over that 15 year repayment period that the children themselves will help as they get established.

With regard to the factor of good faith effort to repay the loans that is sometimes used by the Courts in these situations, the Court finds on the present record that that factor doesn't cut either way. These PLUS loans and the immediate deferments on loans that commenced in 1991, with the larger amounts coming toward the end of that process, does not establish any kind of record as to whether there was or was not any kind of good faith effort to repay. Accordingly I do not consider that as a factor which would support nondischargeability.

■ While the words "undue hardship" might imply some general discretion and balancing of equities in a general sense the case law interpreting the statute under its legislative history clearly indicates that Congress meant the discharge to be applied only to truly unique situations and not just temporary present financial circumstances.

I think it bears repeating as Judge Vaughn commented in the *Clark* case:

"This Court only carries out the wishes of Congress, and that the Court believes there is a public policy issue here, and it's a very stringent test to have a student loan be excepted from discharge. I think if you read the cases you will find that there are very few that do. The circumstances have to be truly unique. I sympathize with anybody with financial problems who feels that their circumstances warrant the exception to discharge, but we only carry out

---

2. In the *Clark* case the debtor was actually unemployed at the time of the hearing before Judge Vaughn but he was able to find on that record

that there was a good probability that the plaintiff would obtain the same employment within the next year.

the laws that Congress has adopted and this is a public policy issue."

*Transcript of Findings from Trial Held 6/6/96* attached to June 6, 1996 *Clark* Order at p. 4.

The loans in question are hereby determined to be nondischargeable under § 523(a)(8) of the Bankruptcy Code, with repayment to commence on January 1, 1997 under the terms specified above, and with a moratorium on interest accrual until January 1, 1997.

DONE and ORDERED.