In re Valerie E. GARRETT, Debtor.

Valerie E. GARRETT, Plaintiff,

v.

NEW HAMPSHIRE HIGHER EDUCATION ASSISTANCE FOUNDATION, Defendant.

Valerie E. GARRETT, Plaintiff,

v.

NORTHSTAR GUARANTEE, INC., Defendant.

Valerie E. GARRETT, Plaintiff,

v.

MASSACHUSETTS HIGHER EDUCATION ASSISTANCE CORPORATION, d/b/a American Student Assistance, Defendant.

Valerie E. GARRETT, Plaintiff,

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, a/k/a PHEAA, Defendant.

Bankruptcy No. 94–10387–JEY.
Adv. Nos. 94–1093–MWV, 94–1094–MWV, 94–1095–MWV and 94–1096–MWV.

United States Bankruptcy Court, D. New Hampshire.

April 4, 1995.

---

Arthur Trombly, Keene, NH, for plaintiff Valerie E. Garrett.

J. Christopher McGuirk, Newmarket, NH, for defendant NH Higher Educ. Assistance Foundation.

Richard Craven, Chapter 7 Trustee, Nashua, NH.

Gerri Karonis, Manchester, NH, for U.S. Trustee.

Randall Pratt, Schreiber and Associates, Harrisburg, PA, for defendant Northstar Guarantee, Inc.

K. Kevin Murphy, PHEAA, Harrisburg, PA, and Mark Connolly, Concord, NH, for defendant PA Higher Educ. Assistance Agency.

John J.A. Schrepfer, Schrepfer and Paradis, Manchester, NH, for defendant MA Higher Educ. Assistance Corp. d/b/a American Student Assistance.

John Ullian, Law Office of L. Ullian & Assoc., Braintree, MA, for defendant MA Higher Educ. Assistance Corp. d/b/a American Student Assistance.

## MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

The Court has before it four adversary proceedings brought by the debtor/plaintiff, Valerie Garrett ("Garrett"), against the respective following defendants: Northstar Guarantee, Inc. ("Northstar"), New Hampshire Higher Education Assistance Foundation ("NHHEAF"), Pennsylvania Higher Education Assistance Agency ("PHEAA") and Massachusetts Higher Education Assistance Corporation ("MHEAC") (collectively referred to as "Defendants"). Each of the adversaries seeks to have student loans discharged pursuant to section 523(a)(8) of the Bankruptcy Code on the grounds of undue hardship.

A hearing was held on all four adversaries on January 23, 1995, it having been agreed to by all the parties that the issues were the same with respect to each adversary proceeding, and for reasons including judicial economy, they should all be tried as one. This memorandum opinion and a separate judgment will be issued in each of the adversary proceedings.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### COMPLAINT

The complaint in each of the adversaries is the same with the exception of the date that the loans were incurred and the amount Garrett believes to be due. Garrett alleges that she is without sufficient assets or income to currently repay the loans. She further alleges that she will never be able to repay the loans since, although she has a law degree, she will never be able to practice law because she was incarcerated for a felony and has medical problems that restrict the types of employment she is capable of obtaining. She admits that her bankruptcy was filed within seven years of the beginning of the repayment period on each of the loans, but argues that they should be discharged on the grounds of undue hardship. Section 727(b) of the Bankruptcy Code does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. §§ 523(a)(8)(A) and (B).

### FACTS

The Debtor filed a petition under chapter 7 of the Bankruptcy Code on February 18,

1994, and these adversary proceedings on July 12, 1994. The record indicates the following relevant facts. Garrett is married and currently resides in Nashua, New Hampshire, although she is the joint owner of a residence in Hinsdale, New Hampshire, which is currently being rented. It appears from Garrett's schedules that there is some equity in that residence. Her husband is a full-time student at New Hampshire Technical College, scheduled to graduate in May 1995. He is also a part-time flight instructor whose income fluctuates with the weather. Mr. Garrett has not filed bankruptcy. Garrett has three dependent children of whom she has custody, and two dependent children of whom her former husband has physical custody.

Garrett's schooling, which is relevant to these adversary proceedings, consists of her attendance as a full-time student at Keene State College from January 1983 through December 1986 and her attendance at Western New England College, School for Law, from which she graduated in May 1990 with a Juris Doctor.

From January 1991 to April 1992, she was employed at a non-legal job by Rural Housing Improvement, Inc. of Winchendon, Massachusetts, at an annual salary of $21,000.00 per year. At some point, Garrett took the New Hampshire bar examination and did not pass. She has not attempted to take any other bar exam. In May 1992, she was incarcerated along with her husband for pleading guilty of obstruction of justice and spent eight months in a federal penitentiary and time in a halfway house thereafter. Both prior to and after her incarceration, Garrett kept an extensive log of her employment attempts. This log shows that from August 1989 through August 1990, Garrett's employment search was for mainly legal positions and was without success. After August 1990, Garrett primarily sought non-legal positions, but without success except for the employment mentioned above, which she commenced in January 1991. The log then begins again after her incarceration in March

1993 and, though extensive, shows that she was once again unsuccessful in her attempts. Since August 1994, she has been employed at BBC Computer at an original wage of $7.00 per hour, which has been increased to $7.70 per hour. Garrett testified that her current employer had been bought by another company and she believed her job to be in jeopardy.

The loans in question were incurred from September 1985 through November 1989. Garrett testified that for a period of time, she obtained forbearances from the Defendants and no payments through that period were due or made. However, the forbearances expired and the evidence is that no payments have ever been made on the loans in question.

Finally, Garrett testified that she had a significant number of medical problems, including positive tests for tuberculosis, rosacea and recently, multiple sclerosis. Although a letter from a Dr. Taylor–Olson dated April 30, 1992, and a letter from a Dr. Pollen dated July 18, 1994, were admitted into evidence as Plaintiff's Exhibits 1–D and 1–E, respectively, there was no competent medical testimony presented at the trial as to how these conditions affected Garrett's present or future employment. The letter from Dr. Pollen indicated that the multiple sclerosis had not been established as of the date of his letter, or July 18, 1994.

Prior to the trial, the Defendants were required by the Court to file a statement of a payment plan they would accept from Garrett. A summary of those payment plans follows:

NHHEAF   The principal and interest due at time of filing was $6,615.27. The NHHEAF would accept $50.00 per month for 322 months for a total of $16,100.00 with interest.

Northstar   Northstar alleged a balance due of $18,474.07 and agreed to accept the amount of $13,800.00 over a period of ten years as follows:

| years 1 and 2 | $ 50.00 per month; |
| years 3 through 5 | $100.00 per month; and |
| years 6 through 10 | $150.00 per month. |

Its statement also indicated that a balance of $32,000.00, for which there was no substantiation, would be discharged.

**MHEAC** MHEAC would fix the amount owed at $14,000.00. Garrett's complaint showed an amount due of $14,888.47. The payment plan was as follows:

| | |
|---|---|
| years 0 through 1 | $ 0.00 per month; |
| years 1 and 2 | $ 50.00 per month; |
| years 2 through 4 | $ 75.00 per month; |
| 83 monthly payments | $138.00 each; and |
| one final payment | $146.00 for a total of $14,000.00. |

Interest would not accrue during the payment plan.

**PHEAA** PHEAA alleged $5,730.89 due as of the filing date. Its plan called for monthly payments of $54.38 for a 180 months until paid in full, with interest at the contract rate for a total payment of $9,788.40.

The Court has compiled the total yearly payment rates proposed as follows:

| | |
|---|---|
| year 1 | $154.38 per month; |
| year 2 | $204.38 per month; |
| years 3 and 4 | $279.38 per month; |
| year 5 | $342.38 per month; and |
| years 6 through 10 | $392.38 per month. |

After year 10, the monthly payments would go down as the Northstar payment would be completed.

At trial, Garrett testified that she was unaware of the amount of these payments, and it did not make any difference as she could not make any payments in any case.

### DISCUSSION OF LAW

Under section 523(a)(8)(A) & (B), Garrett must show undue hardship in order to have these loans discharged. In support of this, Garrett claims that her current income is insufficient to make any payments and the chance of her obtaining better employment is minimal because of her felony conviction and her medical conditions and, thus, she has met the undue hardship burden. This Court disagrees.

The Seventh Circuit in *In re Roberson*, 999 F.2d 1132 (7th Cir.1993), adopted the three-part test set forth by the Second Circuit in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir.1987) (per curiam), to determine when undue hardship exists. Under this test,

"[u]ndue hardship" requir[es] a three-part showing (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Roberson*, 999 F.2d at 1135 (quoting *Brunner*, 831 F.2d at 396). The Court now adopts this three-part test.

In *Barrows v. Illinois Student Assistance Comm'n (In re Barrows)*, 182 B.R. 640 (Bankr.D.N.H.1994), Judge Yacos summarized the relevant law for part one of the test:

To make its determination, the Court must look to the individual facts and circumstances surrounding the debtor's financial prospects in the repayment of the student loans. *In re Webb*, 132 B.R. 199, 202 (Bankr.M.D.Fla.1991). Current financial adversity, characteristic of all debtors in bankruptcy court, is not a determinative factor in establishing dischargeability. *In re Wardlow*, 167 B.R. 148, 151–152 (Bankr. W.D.Mo.1993); *Matter of Springer*, 54 B.R. 910, 913–14 (Bankr.D.Neb.1985). Although the debtor need not live at the poverty line to obtain a discharge, there must be some evidence of attempts to min-

imize expenses to meet the financial commitment voluntarily made to obtain the benefits of a higher education. *In re Berthiaume*, 138 B.R. [516] at 521 [ (Bankr.W.D.Ky.1992) ]; *In re Plotkin*, 164 B.R. 623, 624 (Bankr.W.D.Ark.1994). The Court can take into account the fact that bankruptcy itself in discharging other debts usually makes it easier for the debtor to pay the nondischarged debt. *In re Courtney*, 79 B.R. at 1013.

*Id.* at 648–49.

■■■ In order for Garrett to meet the first part of the test, her current financial condition must be analyzed to see if payment of the loans would cause her standard of living to fall below that which is minimally necessary. Other than bold assertions of her inability to pay, there is no evidence in the record to support such a finding. First, Garrett's Schedules I & J of her bankruptcy petition are misleading and inconsistent with her testimony in court. Her Schedule I shows no income at all. Her testimony is that she is currently employed at $7.70 per hour and that she also receives rent from the residence in Hinsdale where she does not live. On the other hand her Schedule J, which shows her expenses, lists the expenses of both her and her husband, including mortgage and tax payments on the Hinsdale residence. Further, the schedules do not incorporate any income of her husband. Finally, her bankruptcy schedules show the value of the Hinsdale property to be $110,000.00 with debts of $82,000.00. The answers to interrogatories admitted into evidence state the value of this property to be $100,000.00. In any case, taking into consideration that the property is jointly owned, she would have equity of $9,000.00 to $14,000.00, which would be available for repayment of these loans. Garrett has not met her burden to show that in order to repay the loans, her current standard of living would be below that which is minimally necessary.

■■■ In *Barrows*, Judge Yacos summarized the relevant law for part two of the test as follows:

"[A]n undue hardship discharge should only be granted to debtors 'severely disadvantaged economically as a result of

unique factors which are so much a part of the bankrupt's life, present and in the foreseeable future, that the expectation of repayment is virtually non-existent, unless by that effort the bankrupt strips himself of all that makes life worth living.' " *In re Courtney*, 79 B.R. 1004, 1010 (Bankr. N.D.Ind.1987) (quoting *In re Kohn*, 5 B.C.D. 419, 424 (Bankr.S.D.N.Y.1979)). To allow a discharge of the student loans, courts look for a "certainty of hopelessness" in the debtor's personal and financial future. *In re Ballard*, 60 B.R. 673 (Bankr. W.D.Va.1986) (quoting *In re Love*, 33 B.R. 753, 754 (Bankr.E.D.Va.1983)). The inability to pay which can constitute undue hardship must be long-term and not simply a temporary loss of income. *In re Bowen*, 37 B.R. 171 (Bankr.M.D.Fla.1984); *In re Courtney*, 79 B.R. at 1007 (Bankr.N.D.Ind. 1987).

*Barrows*, 182 B.R. at 648. Therefore, in order to meet the second requirement, Garrett must show that she will be unable to make the payments on the student loans in the future. Garrett relies on her felony conviction and her health problems, which she claims will prevent her from obtaining a job in the future with sufficient income to enable her to repay the loans, to support this requirement.

First, she argues, because of her felony conviction she is unable to practice law. The evidence is that she took the New Hampshire bar examination once prior to her conviction and failed and subsequently did not apply to take any bar exam again on the belief that, because of her felony conviction, she either will not be allowed to sit for the bar or, if taken, she will not be allowed to be a member of the bar. No evidence exists of either of these propositions. She likewise has argued that she is also prevented from teaching, but also presented no evidence of that fact.

In fact, the evidence is that prior to her incarceration, she was employed at an annual salary of $21,000.00 in a position that was neither legal nor in teaching. The evidence is that she is currently employed at a rate of $7.70 per hour, which, assuming a forty hour week, translates into an annual gross salary

of approximately $16,000.00. Further, her husband is to graduate in May 1995 and should be able to contribute more to the family expenses. The Court believes that the felony conviction may have affected her current ability to obtain employment, but also believes that she has the talent and ability to obtain gainful employment and will, in fact, be able to in time.

Second, Garrett argues that her medical condition inhibits her from obtaining employment. In support of this, two letters were entered into evidence. A letter from Dr. Taylor–Olson dated April 30, 1992, contained the following recommendations: "2. Avoid excessive heat, cold, wind, sunlight[;] 3. Avoid heavy lifting (clerical work, eg. typing okay)." (Plaintiff's Exhibit 1–D.) Similarly, a letter from Dr. Pollen dated July 18, 1984, stated, "[a]voidance of exacerbating events should be adhered to, specifically, extremes of temperature and in cases of rosacea, exposure to ultraviolet radiation. She should avoid heavy listing (sic), repeated bending, stooping, climbing or walking. If a diagnosis of MS is established, then frequent periods of rest should be prescribed." (Plaintiff's Exhibit 1–E.)

There was no medical evidence at trial that MS had been established. Based on the evidence before the Court, the Court finds that Garrett's medical problems would not prevent her from obtaining the type of employment she is most suited for.[1]

The third prong of the test is whether Garrett made a good faith attempt to repay the loan in question. The evidence is that Garrett, for a substantial period of time, requested and obtained deferments on her repayment obligations. When these deferments expired and she was unable to obtain additional deferments, she filed bankruptcy. The record is devoid of any payment made by Garrett on these loans or even any attempt to enter into a repayment schedule with the Defendants. This is highlighted by the fact that, during the trial, she was unaware of the payment plans submitted by the

Defendants as part of this proceeding. As noted above, the total of the first year payments without any negotiation on her part came to $154.38 per month. The fact that she was unaware at trial of these repayments is alone substantial evidence of Garrett's lack of good faith in attempting to repay these loans.

The Defendants also assert that the inability to repay must not be self-imposed, citing *In re Price,* 1 B.R. 768 (Bankr.D.Haw.1980), and *In re Holzer,* 33 B.R. 627 (Bankr. S.D.N.Y.1983). They argue that, since Garrett alleges that her inability to obtain employment is because of her felony conviction, the actions leading to that conviction were of her own making and should not be considered in determining undue hardship.

Since the Court has found that (1) the evidence is insufficient for it to determine whether Garrett cannot maintain, "based on current income and expenses, a 'minimal' standard of living for [herself] and [her] dependents if forced to repay the loans"; (2) because of her education and employment history, her inability to obtain employment with sufficient income will probably not be permanent; (3) the evidence on her health condition is insufficient to determine whether it will substantially affect her employment in the future; and (4) Garrett has not made a good faith attempt to repay the loans, the Court will put off the issue of self-imposition for another day.

Based on the findings and rulings contained herein, Garrett's Complaint for Hardship Discharge of Student Loans is denied. A separate order will issue in each adversary.

1. The Court notes, based on the testimony of Michael Rivitz, Director of Claims and Collections for NHHEAF, that there is a separate procedure for discharging student loans for medical reasons alone.