In re Christopher McCLAIN, Debtor.

Christopher McClain, Plaintiff,

v.

American Student Assistance (ASA), et al., Defendants.

Bankruptcy No. 00–12493–MWV.
Adversary No. 00–1153–MWV.

United States Bankruptcy Court, D. New Hampshire.

Jan. 2, 2002.

See also 264 B.R. 230.

44

Geraldine Karonis, Office of U.S. Trustee, Manchester, NH, for U.S. Trustee.

Linda Argenti, Nashua, NH, for plaintiff.

Marc McDonald, Ford & Weaver, Portsmouth, NH, for defendant ASA.

Joel Brighton, Wiggin & Nourie, Manchester, NH, for defendant Educational Credit Management Corp.

Michael Askenaizer, Nashua, NH, Chapter 7 Trustee.

### MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it the complaint[1] of Christopher McClain ("Debtor"/"Plaintiff"), in which he seeks a discharge of certain student loans currently held by The Educational Resources Institute, Inc. ("TERI") and Educational Credit Management Corporation ("ECMC") (collectively "Defendants") on the grounds of undue hardship pursuant to § 523(a)(8) of the United States Bankruptcy Code (the "Code"). In addition, the Court has Debtor's Motion for the Discharge of TERI's Debt and TERI's Motion For and Regarding Application of the *In re Grigas* Standard. For the reasons set out below, the

---

**1.** Although not specifically divided into separate counts, the complaint is made up of two parts. The first section relates exclusively to the dischargeability of Debtor's educational loans, and is the subject of the Court's instant Memorandum Opinion. The second section, labeled "Equal Protection," has already been adjudicated by this Court in *McClain v. American Student Assistance (In re McClain)*, 264 B.R. 230 (Bankr.D.N.H.2001), in which Defendants' motion for judgment on the pleadings, on the portion of the complaint challenging the constitutionality of 11 U.S.C. § 523(a)(8), was granted.

Court denies the Debtor's request for a discharge of his educational loans. The Court also holds that § 523(a)(8) is applicable to TERI. Additionally, since the Debtor has the ability to repay the student loans under the terms set forth by the Defendants, it is unnecessary for this Court to consider TERI's request for a reevaluation of the *In re Grigas* repayment standard.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### FACTS

The Debtor is a 34 year-old, single male, who is presently engaged. He received a Bachelor's Degree from the University of New Hampshire in 1989 and a Juris Doctor Degree from Vermont Law School in 1992. On August 30, 2000, the Debtor filed for bankruptcy under Chapter 7 of the Code. On Schedule F accompanying his bankruptcy petition, the Debtor listed numerous outstanding student loans, which are the basis of the instant dispute. The Plaintiff's loans with Ameritrust/Key, which were subsequently assigned to TERI, presently have balances of $15,129.06, $16,838.36 and $5,165.20. Plaintiff's American Student Assistance ("ASA") loans, which were assigned to ECMC, presently have a total balance of $77,027.35. The Debtor argues that the Court should declare these loans dischargeable pursuant to § 523(a)(8) because their payment would inflict undue hardship upon him.

The Debtor presented evidence of a varied employment history after the completion of law school. After graduating in the bottom ten percent of his law school class, he struggled to find a legal position. After a year-long search and passing the New Hampshire Bar exam, he obtained a position as an associate attorney with a firm in Nashua, New Hampshire, earning an annual salary of $24,000. He was discharged from his position after four months. Subsequent to his dismissal, the Debtor again attempted to find work in the legal field, receiving a total of four interviews, none of which resulted in a position. With financial assistance from his father, the Debtor then attempted to start his own solo law practice, but was unable to contract any clients. In the interim, the Debtor testified he took a series of low-paying positions. Then, again with encouragement and financial assistance from his father, the Debtor went back to school, earning a certificate in computers from the University of Massachusetts, Lowell, and being provisionally admitted into the Masters program in computer science at the University of New Hampshire. The Debtor is presently employed in the computer industry, earning approximately $53,000 per year.

Further, the Debtor also testified that he attempted suicide during law school and sometime in 1995 or 1996. Although he testified that he has suffered from depression since he attended law school, the Debtor only recently sought formal treatment by seeing a psychologist, Dr. David Diamond, from January through May, 2001, with an additional session in August 2001. These sessions only took place after the Debtor filed his bankruptcy petition and the instant adversary proceeding. Dr. Diamond diagnosed the Debtor as suffering from severe depression, which affects his professional life because he lacks energy and the ability to concentrate. The Debtor has also taken anti-depressant medication prescribed by his primary care

physician. However, the Debtor also admitted that he has depended on alcohol for several years, even during the course of his treatment for depression. In fact, Debtor testified that most of his monthly recreational expense of $150 goes towards the purchase of alcohol.

The Defendants were required by the Court to file statements of acceptable repayment terms. ECMC proposed to set the interest of its notes at 7.5% and accept $629.21 from the Debtor per month for a period of 240 months, totaling payments of $151,010.40. TERI proposed to reduce its principal to $35,000.00, payable at a 6% fixed rate of interest, which translates to payments of $295.35 per month for 180 months, totaling payments of $53,163.00. The Debtor responded with his own proposal to pay $436.00 per month for no more than a period of 84 months, which would total payments of $36,624.00.[2]

### DISCUSSION

#### A. Nonprofit Status of TERI

 The Debtor challenged the applicability of the § 523(a)(8) nondischargeability provision to TERI, a non-profit guarantor of student loans funded by a for-profit entity, Ameritrust/Key. Section 523(a)(8) provides that student loans are excepted from discharge if such loan is "... made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution...." 11 U.S.C. § 523(a)(8). Congress used expansive language in its designation of which student loans are non-dischargeable, indicating that the program pursuant to which the loan was made must be funded in part by a non-profit entity, not the loan itself. *See HEMAR Service Corp. of America v. Pilcher (In re Pilcher),* 149 B.R. 595, 597 (9th Cir. BAP 1993). Further, the language "made under any program funded in whole or in part by ... a nonprofit institution," indicates that "Congress intended to include within section 523(a)(8) all loans made under a program in which a nonprofit institution plays any meaningful part in providing funds." *Id.* (quoting *In re Hammarstrom,* 95 B.R. 160, 165 (Bankr.N.D.Cal.1989) (holding educational loan initially made by commercial bank but immediately purchased by nonprofit organization was nondischargeable, in that parties contemplated from outset that nonprofit organization would purchase loan)).

 The loan documentation in this case provides that:

> [a]fter The Education Resources Institute, Inc. (hereinafter referred to as "TERI") agrees to guarantee any loan [bank agrees to make to debtor, bank] will send [debtor] a Disclosure Statement. In addition to other information, the Disclosure Statement, which [debtor] agree[s] shall be incorporated in and made part of this Note, will tell [debtor] the amount of [debtor's] disbursement and the amount of [bank's] origination fee and the guaranty fee.

As the above language illustrates, Ameritrust/Key's funding of the loans at issue was conditioned upon TERI's participation in guaranteeing the loans. Thus, TERI played a meaningful part in procurement of the loans, making them nondischargeable pursuant to the language of § 523(a)(8).

---

**2.** Debtor's proposal, *Plaintiff's Response to Court's Request for Repayment Terms,* which was filed on September 10, 2001, also included new issues, relating to poverty guidelines, that the Court will not consider in reaching its decision because the Debtor failed to raise them at trial.

## B. Dischargeability of Student Loans

█ The issue before the Court is whether the Debtor's circumstances, income, and expenditures establish that payment of his student loans would inflict undue hardship upon him, such that the loans are dischargeable. Section 523(a)(8) provides that an educational loan shall not be discharged, "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents...." 11 U.S.C. § 523(a)(8). The Code does not specifically define "undue hardship." However, in *Garrett v. New Hampshire Higher Educ. Assistance Found. (In re Garrett)*, 180 B.R. 358 (Bankr.D.N.H.1995), this Court adopted the test set forth by the Court of Appeals for the Second Circuit in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2nd Cir.1987) (per curiam) in determining what constitutes undue hardship. The *Brunner* test requires the Debtor to make a three-part showing:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

*In re Garrett*, 180 B.R. at 362 (citations omitted).

█ In applying this test to the Debtor's situation, this Court must first determine whether he can meet his burden of demonstrating that he "cannot maintain ... a 'minimal' standard of living for [himself] and [his] dependents if forced to repay the loans." *Id.* The record indicates that the financial condition of the Debtor is apparently improving. Although the Debtor is not currently employed in the legal profession, he is employed in the computer industry, earning approximately $53,000 per year. Despite Debtor's contention that he may one day be married with children, he is presently a single individual without dependents. In addition, until June 2000, it appears that the Debtor did not have significant housing expenses because he lived with his father.

Further, Debtor's Schedules I and J, containing information as it existed as of the day of his filing, show a positive monthly cash flow of $760.81, even with the Debtor's allocation of $100 per month for recreational expenses, which the Debtor testified he uses primarily to fund his alcohol use, and monthly payroll deductions of $404.16 for his 401K and AD & D. Through the pleadings and the course of the trial, the amount allocated for the Debtor's recreational expense increased to $150 per month, his monthly 401k deduction increased to $623, and the amount of his current rental payment decreased, indicating that the Debtor now has an even higher amount of income available for his student loan payments. The Debtor's schedules also reflect that he is making monthly car payments of $299 towards his purchase of a 2000 Mercury Cougar. Additionally, in October of 2000, the Debtor amended his Schedules to reflect that his company had promised him 5000 shares of its stock, an asset which the Debtor indicates has an unknown value.

The record does not support a finding that the Debtor is unable to maintain or would be unable to maintain a "minimal" standard of living if forced to repay the student loans. Accordingly, based on his current financial condition, compelling the Debtor to pay his student loans would not cause his standard of living to fall below what is minimally necessary because the

Debtor has the ability to pay his student loans as modified.

■ Under the second prong, the Debtor must show that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans. These additional circumstances must be "extraordinary and exceptional and generally indicate a hopelessness for the indefinite future as to any possibility of repayment." *Keilig v. Massachusetts Higher Educ. Assistance Corp. (In re LaFlamme)*, 188 B.R. 867, 871 (Bankr.D.N.H.1995); *see also Barrows v. Illinois Student Assistance Comm'n (In re Barrows)*, 182 B.R. 640, 648–49 (Bankr. D.N.H.1994) ("Current financial adversity, characteristic of all debtors in bankruptcy court, is not a determinative factor in establishing dischargeability"). The Court also finds that the Plaintiff has not met his burden under this factor.[3]

■ Debtor argues that the "additional circumstance" impairing his ability to repay his student loans is that he suffers from depression. A debtor who is suffering from emotional and psychiatric problems has the burden of showing how these problems impair his or her ability to work. *Brightful v. Pennsylvania Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 330 (3rd Cir.2001). While there is evidence on the record that the Plaintiff has been treated for depression, he has been steadily employed since 1999. There is no indication that his condition will continue to deteriorate in the future. Although Dr. Diamond testified that a patient can have periods of "up's and down's" during the course of therapy, he also testified that depression is often treatable these days. On cross-examination, Dr. Diamond also admitted that Debtor's recreational alcohol use would concern him.

In *In re Brunner*, the Court denied the debtor, who alleged to suffer from anxiety and depression, a discharge of her student loans where the evidence was "too thin to support a finding that her chances of finding any work at all [were] slim." *Brunner v. New York State Higher Educ. Servs. Corp. (In re Brunner)*, 46 B.R. 752, 757 (S.D.N.Y.1985). In the present case, there is insufficient evidence that the Plaintiff's depression will continue in the future to prevent him from repaying his student loans as there is little evidence that his depression currently affects his ability to maintain employment. Consequently, he has not demonstrated the exceptional circumstances needed to meet his burden under the second prong of the *Brunner* test.

■ Finally, based on the record before it, the Court cannot find that the Plaintiff has made a good faith effort to repay his student loans. *See Grigas v. Sallie Mae Servicing Corp. (In re Grigas)*, 252 B.R. 866, 874–75 (Bankr.D.N.H.2000) (holding that Debtor had satisfied good faith effort prong because, although her

---

**3.** The Debtor urges the Court to consider the fact that the Debtor has not been able to utilize his legal training, citing *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108 (9th Cir.1998). As the Court in *In re Brunner* stated, consideration of the value of the education "... is not only improper, it is antithetical to the spirit of the guaranteed loan program...." *Brunner v. New York State Higher Educ. Servs. Corp. (In re Brunner)*, 46 B.R. 752, 755, fn. 3 (S.D.N.Y.1985). While the Court recognizes that the Debtor has made numerous, unsuccessful attempts to obtain and maintain a position in the legal field, the Debtor voluntarily took a chance in incurring his educational debt and this chance, at least for the time being, has not yielded a position in the legal field. It cannot be said that Debtor's educational experiences were not of value or that his income is unlikely to increase because of his education.

payments were few and intermittent, Debtor devoted any additional income to loans and had made significant efforts to restructure her loans to accommodate her meager income). The record shows that the Debtor has not attempted to work out a repayment schedule, other than requests for documentation as to exact amounts that he owed. Further, the Debtor testified he has made only three payments, totaling $300, to TERI and that he began making $600 payments to ASA, ECMC's prior successor, but made no further payments because he was unsure how his payments were being allocated. In the Court's opinion, the Debtor's payment history, coupled with the insufficient evidence that the Debtor devoted his additional income to paying his loans or made significant efforts to attempt to restructure his loans to accommodate his resources, indicates that he has not made a good faith effort to repay his educational loans.

### C. Application of the In re: Grigas Standard

Absent a finding of undue hardship, the loans are nondischargeable under federal bankruptcy law. This Court has determined that the Debtor has not met his burden for a finding of undue hardship and, thus, TERI's motion asking this Court to reevaluate the *In re Grigas* standard, which provides that student loans can be discharged on a loan by loan basis, is moot. *In re Grigas,* 252 B.R. at 874.

### CONCLUSION

Based upon the testimony and documentary evidence presented, the Court finds that the Debtor has not met his burden under § 523(a)(8). Accordingly, this Court orders that the Plaintiff be given a moratorium until January 30, 2002 without additional interest and without making any payments to the Defendants. Commencing on February 1, 2002, the payment plans prepared by the Defendants with regards to their respective loans shall be adopted and payments commenced thereon unless the parties otherwise agree to a different repayment schedule.

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.