**In re Doretha Belinda PERKINS, Debtor.**

**Doretha Belinda Perkins, Plaintiff,**

**v.**

**Pennsylvania Higher Education Assistance Agency, Defendant.**

**Bankruptcy No. 03–80777C–7D.**
**Adversary No. 03–9075.**

United States Bankruptcy Court,
M.D. North Carolina,
Durham Division.

Dec. 2, 2004.

Doretha Belinda Perkins, Durham, NC, pro se.

*MEMORANDUM OPINION*

STOCKS, Bankruptcy J.

This adversary proceeding came before the court for trial on September 30, 2004. In this proceeding the Plaintiff, Doretha Perkins, challenges the nondischargeability of her educational loan obligations to the Defendant, Pennsylvania Higher Education Assistance Agency ("PHEAA"), under § 523(a)(8) of the Bankruptcy Code. Because the court previously granted summary judgment for the Defendant on the issues of the existence of an education debt and whether the consolidation loan to plaintiff was made, insured or guaranteed by a governmental unit, the only issue remaining for trial was whether requiring the Plaintiff to repay the loan would impose upon her an undue hardship. When the controlling case law is applied to the facts of the Plaintiff's case, it is clear that the Plaintiff has failed to establish that requiring her to pay her student loans would constitute an undue hardship and therefore under § 523(a)(8), plaintiff is not entitled to a discharge of her educational loans. The following constitutes the court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

FACTS

The Plaintiff attended law school at George Mason University from 1991 to 1994 and financed her legal education by taking out a series of Law Access Loans from Society National Bank. After she graduated from law school in May of 1994, the Plaintiff consolidated her student loans through PHEAA's Law Access Federal Loan Consolidation Program, under which PHEAA acted as the servicer and guarantor of a consolidation loan made by Society National Bank to the Plaintiff in the total principal amount of $44,205.46. The Plaintiff chose the "Select/5" repayment alternative, under which she agreed to repay the consolidation loan over a period of 360 months at 8% interest, with 24 monthly payments of $300.45, 36 monthly payments of $318.01, 299 monthly payments of $337.21, and one final payment of $335.71.

The Plaintiff began requesting hardship forbearances on June 20, 1995, shortly after her loan consolidation repayment period began on May 3, 1995. Between 1995 and 2000, the Plaintiff requested and received a total of six forbearances on her educational loans. PHEAA advised the Plaintiff that interest was accruing during these forbearance periods and that any unpaid accrued interest would be capitalized. Plaintiff nevertheless elected to pay none of the interest that was accruing. In fact, during the entire period following her graduation in May of 1994, the Plaintiff has made only a single payment on the loan, that being a $100.00 payment.

Forbearance eventually ceased to be an option for the Plaintiff, and she defaulted on the loan in July of 2001. PHEAA, as guarantor, paid a default claim to Society National Bank and became the legal owner of the consolidation loan. The total amount owed by the Plaintiff to PHEAA on July 17, 2001 was $71,302.00. The total

amount owed by the Plaintiff to PHEAA as of September 30, 2004 was $89,564.93.

The Plaintiff is 44 years old with no dependents. She took the North Carolina Bar Examination in February of 1999 but was unsuccessful. Although she has never become a licensed attorney, the Plaintiff's resume reflects that she has been steadily employed in various fields since her graduation from law school in 1994. The Plaintiff has been employed as the lead litigation paralegal at the law firm of Olive & Olive, P.A. in Durham since September of 2001. The Plaintiff's salary at the time of filing of her Chapter 7 petition was $33,000.00. She has received a raise since the filing of her bankruptcy petition based in part on good performance, and has a current annual salary of $37,000.00. Plaintiff's gross monthly salary is $3,083.33 and after deductions for taxes, insurance and a 401(k) contribution, Plaintiff's current net monthly income is $2,022.14. Plaintiff's voluntary 401(k) contribution is $400.00 per month which, in effect, permits her to save that amount each month.

There is some evidence that the Plaintiff suffers from anxiety and depression. Her former psychiatrist, Dr. Jeffrey Chambers, characterized the Plaintiff's mental condition as neurosis, a limiting condition which prevents her from achieving success in high-stakes situations, such as the bar examination. Dr. Chambers also testified that while her neurosis made it unlikely that she would ever pass the bar examination and become a licensed lawyer, it did not prevent her from working full-time as a paralegal or in other gainful employment. Plaintiff also has experienced some tendinitis but was not being treated for that condition at the time of the trial.

Plaintiff filed her Chapter 7 bankruptcy petition with this court On March 4, 2003. Plaintiff listed monthly expenses of $4,198.00 on her Schedule J. At trial, Plaintiff submitted a revised budget (PX–4) in which she listed purported monthly expenses totaling $4,730.00. No explanation was provided as to how Plaintiff is paying expenses of $4,730.00 from a monthly income of $2,022.14. Among the monthly expenses listed on the Plaintiff's budget are $740.00 for rent; a total of $56.00 for home maintenance; $225.00 for food; a total of $517.00 for medical and dental expenses; $250.00 for a car payment, which consists of savings for a new automobile; $30.00 for "recreation"; $200.00 in charitable contributions, which the Plaintiff testified consists of tithes paid to the church at which her father is the pastor; $400.00 for "retirement" and long-term care insurance; $45.00 for basic cable; $20.00 for "special occasions"; $20.00 for "gifts and related travel"; $5.00 for "miscellaneous business services and supplies," which the Plaintiff testified represented costs incurred in connection with the litigation of this adversary proceeding; $100.00 per month for miscellaneous unpredictable expenses; $30.00 for vacations; $125.00 for the care of the Plaintiff's mother, who plaintiff says is ill and living in a nursing home in Virginia; $1,100.00 for another school loan; $100.00 for installment payments to the IRS in back taxes; $40.00 for high-speed internet; $60.00 for "lawsuit related expenses"; $30.00 for inkjet cartridges; $42.00 for savings for a new computer; and $35.00 in savings for a new sewing machine.

## LEGAL ANALYSIS

A. Legal Standard for Undue Hardship: The Brunner Test.

■ Under § 523(a)(8) of the Bankruptcy Code, a discharge granted under § 727 does not discharge a debt for an educational loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by

governmental unit unless excepting such debt from discharge will impose an undue hardship on the debtor and the debtor's dependents. The Bankruptcy Code does not define the term "undue hardship," and courts have developed several different standards for undue hardship in the context of § 523(a)(8). The test most frequently applied is that articulated by the Court of Appeals for the Second Circuit in the case of *In re Brunner*, 831 F.2d 395 (2d Cir.1987). This standard, often referred to as the *"Brunner* test," requires a plaintiff to make the following three-part showing in order to establish undue hardship under § 523(a)(8): (1) that she cannot maintain, based on current income and expenses, a minimal standard of living for herself and any dependents if forced to repay her loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the loan repayment period; and (3) that the she has made good faith efforts to repay the loan. *Brunner*, 831 F.2d at 396. The *Brunner* test has been adopted by the Court of Appeals for the Fourth Circuit. *In re Ekenasi*, 325 F.3d 541 (4th Cir.2003). Courts of Appeals for the Ninth, Third and Seventh Circuits also have adopted the *Brunner* test. *In re Pena*, 155 F.3d 1108 (9th Cir.1998); *In re Faish*, 72 F.3d 298 (3d Cir.1995); *In re Roberson*, 999 F.2d 1132 (7th Cir.1993).

 The Plaintiff has the burden of establishing each element of the *Brunner* test by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (holding that the standard of proof for all dischargeability exceptions listed in § 523(a) of the Bankruptcy Code is the ordinary preponderance of the evidence standard). *See also Faish*, 72 F.3d at 306; *Roberson*, 999 F.2d at 1137. If the Plaintiff fails to meet any one of the three requirements of the *Brunner* test, the court must enter a finding of nondischargeability. *Faish*, 72 F.3d at 306.

B. The Plaintiff has failed to minimize her expenses and failed to show inability to maintain a minimal standard of living if required to repay her educational loan.

 The first prong of the *Brunner* test requires a showing that the Plaintiff would be unable to maintain a minimal standard of living if forced to repay her student loan. In order to make this determination, the court must evaluate whether the Plaintiff has maximized her income and minimized her expenses. See *In re Murphy*, 305 B.R. 780, 793 (Bankr.E.D.Va. 2004); *In re Sands*, 166 B.R. 299, 306–07 (Bankr.W.D.Mich.1994). The latter inquiry requires the court to examine the reasonableness of the expenses listed in the Plaintiff's budget. *In re Pincus*, 280 B.R. 303, 317 (Bankr.S.D.N.Y.2002); *Sands*, 166 B.R. at 306–07.

 A minimal standard of living does not require a debtor to live in poverty, but it does require her to reduce her expenses to an amount that is minimally necessary to meet her basic needs. See *Murphy*, 305 B.R. at 793; *Pincus*, 280 B.R. at 317 ("The minimal standard of living factor has been interpreted to require a showing beyond significant forbearance in personal and financial matters or beyond a restricted budget."). In addressing the first prong of the *Brunner* test, the court should be sensitive to the individual circumstances of each case. *Pincus*, 280 B.R. at 317. A review of the cases, however, is instructive regarding the types of expenses which are often found to be inconsistent with a minimal standard of living. For example, courts have found recreational expenses and household or personal expenses such as

cable television and home internet service to be unreasonable for purposes of determining whether the debtor can maintain a minimal standard of living under the first element of the *Brunner* test. *See, e.g., Pincus,* 280 B.R. at 318 (finding expenses such as $50.00 per month on newspaper and magazine expenses "excessive in light of the sacrifice expected of an individual to repay his student loan obligations"); *In re Buchanan,* 276 B.R. 744, 751–52 (Bankr. N.D.W.Va.2002) (finding expenses for home internet service and movie rentals unreasonable in the context of § 523(a)(8)); *In re East,* 270 B.R. 485, 494 (Bankr. E.D.Cal.2001) (observing that basic cable television was not necessary to maintain a minimal standard of living); *Commonwealth of Virginia State Education Assistance Authority v. Dillon,* 189 B.R. 382 (Bankr.W.D.Va.1995) (finding that debtors failed to meet the first prong of the *Brunner* test where their budget included expenses such as $35.00 per month for cable television); *In re Wardlow,* 167 B.R. 148 (Bankr.W.D.Mo.1993) (finding that plaintiffs were maintaining more than a minimal standard of living where their budget included expenses for cable television, recreation and miscellaneous expenses). A debtor seeking to discharge her educational loans under § 523(a)(8) is also not permitted to support emancipated children or other independent family members at the expense of her creditors. *See, e.g., Buchanan,* 276 B.R. at 751–52 (finding expenses for support of adult children unreasonable in the context of § 523(a)(8); plaintiff "[could not] avoid his obligations toward his creditors by spending his money on an emancipated child"); *In re Coveney,* 192 B.R. 140 (Bankr.W.D.Tex.1996) (finding that debtor's moral obligation to care for her mother, who was not a dependent, did not take priority over her legal obligation to repay her student loans). *But see In re Sequeira,* 278 B.R. 861

(Bankr.D.Or.2001) (applying § 1325(b)(5) disposable income standard for dependency and finding Chapter 13 debtor's contributions to the support of her elderly mother to be reasonable expenses for purposes of § 523(a)(8) undue hardship inquiry). There is a split of authority as to whether religious contributions are permissible expenses for purposes of determining undue hardship under § 523(a)(8). *In re Savage,* 311 B.R. 835, 842 (1st Cir. BAP 2004). *See In re Ritchie,* 254 B.R. 913, 921 (Bankr.D.Idaho 2000) (construing § 523(a)(8) as excluding religious tithing from plaintiff's budget as an improper expense); *In re Lebovits,* 223 B.R. 265, 273 (Bankr.E.D.N.Y.1998) (finding that debtors' religious tithes were an appropriate expense in the context of § 523(a)(8)); *In re Lynn,* 168 B.R. 693 (Bankr.D.Ariz.1994) (holding that plaintiff's religious tithes were an inappropriate expense in the context of § 523(a)(8) where plaintiff received church benefits and services regardless of whether she tithed). Finally, some courts have been reluctant to allow debtors seeking to discharge their educational loans to allocate funds to savings for items such as a new car rather than to student loan payments. *See, e.g., In re Faish,* 72 F.3d 298 (3d Cir.1995) (observing that the debtor would not be allowed a discharge from her student loan obligations so that she could instead devote her funds to savings for the purchase of a new car). Similarly, 401(k) contributions generally are no@t regarded as reasonably necessary for the support or maintenance of a debtor and thus may be considered as available income from which a debtor seeking a § 523(a)(8) undue hardship discharge could use to repay an educational loan. *See In re Pobiner,* 309 B.R. 405 (Bankr. E.D.N.Y.2004) (characterizing the voluntary 401(k) contributions of debtor's spouse as one of many "luxuries" which demonstrated that debtor had failed to

minimize his expenses for purposes of the § 523(a)(8) undue hardship inquiry); *In re Naranjo*, 261 B.R. 248 (Bankr.E.D.Cal. 2001) (pointing to debtor's monthly retirement contribution of $269.00 as evidence that debtor enjoyed better than the minimal standard of living envisioned under the *Brunner* test); *In re Shirzadi*, 269 B.R. 664 (Bankr.S.D.Ind.2001) (citing debtor's voluntary retirement plan contributions of $400.00 per month as evidence of her failure to minimize her expenses as required by *Brunner* test for undue hardship under § 523(a)(8)); *In re Speer*, 272 B.R. 186 (Bankr.W.D.Tex.2001) (holding debtor was entitled to discharge of student loans based on undue hardship under § 523(a)(8) but adding debtor's retirement plan contributions back into his income for purposes of analysis and noting that "paying the government back would certainly take priority over saving for retirement under a standard of 'undue hardship'"). *See also In re Hansen*, 244 B.R. 799 (Bankr.N.D.Ill.2000) (holding that voluntary pension contributions are not reasonably necessary expenses under § 1325(b) and thus constitute disposable income that must be devoted to Chapter 13 plan payments); *In re Cornelius*, 195 B.R. 831 (Bankr.N.D.N.Y.1995) (holding voluntary 401(k) contributions to be disposable income under § 1325(b)); *In re Cavanaugh*, 175 B.R. 369 (Bankr.D.Idaho 1994) (holding debtor's voluntary 401(k) contributions were not reasonably necessary for debtor's support and maintenance and thus had to be considered as disposable income for purposes of § 1325(b)); *In re Fountain*, 142 B.R. 135 (Bankr.E.D.Va.1992) (finding voluntary contributions to pension fund should be included in debtor's disposable income for confirmation purposes because they were not reasonably necessary to the support and maintenance of debtor or debtor's dependents).

■ With respect to whether the Plaintiff has maximized her income, it would seem that the most likely means for a law graduate to maximize income would be to take and pass the bar examination and obtain a law license. Yet, Plaintiff offered no explanation as to why she did not take the bar examination until February of 1999, which was nearly five years after she graduated from law school in May of 1999. This five-year hiatus certainly did not enhance plaintiff's chances of passing the bar examination and thereby qualifying to practice law. However, apart from not pursuing a law license, the Plaintiff has made efforts to obtain other types of employment. Initially, plaintiff obtained employment at an accounting firm and later as a paralegal at various law firms. Plaintiff also has attempted unsuccessfully to publish a novel and operate her own business developing and marketing study software for law students which also was unsuccessful. Considering plaintiff's evidence regarding the limitations that make it questionable whether she can pass the bar examination and practice law, the court finds that plaintiff's history of other employment is sufficient to support a finding that in recent years she has maximized her income through her employment as a paralegal.

■ The Plaintiff's current budget, however, reflects very clearly that she has failed to minimize her expenses. For example, the Plaintiff pays rent of $740.00 per month to live in a gated apartment complex with a pool and an exercise room, and, despite the myriad housing options in her community, admitted that she had not sought a less expensive place to live. Additionally plaintiff has included numerous items in her alleged budget which should be eliminated either because they are not necessary to maintain a minimal standard of living or because they are expenses not

actually being paid by the Plaintiff. Two items can be eliminated from the Plaintiff's budget at the outset: the $1,100.00 allocated to payment on another educational loan and the $400.00 designated as retirement and long-term care insurance. The alleged $1,100.00 student loan payment is not properly included in the Plaintiff's budget because it is not an expense which she is paying or is obligated any longer to pay. The $400.00 retirement expense is in addition to the $400.00 per month which is deducted and paid into her 401(k) account each month. As to the $400.00 purported expense for retirement and long-term care insurance, Plaintiff did not establish by credible evidence that such an expense, in fact, is being paid each month. Moreover, neither the $400.00 shown in Plaintiff's budget as an expense for retirement nor the $400.00 401(k) contribution are required for a minimal standard of living. The elimination of the retirement and educational loan items from the Plaintiff's budget reduces her expenses from $4,730.00 to $3,230.00 per month and the elimination of the 401(k) contribution increases her net monthly income by $400.00 to approximately $2,422.14.

Other expenses can be eliminated from the Plaintiff's budget because the Plaintiff presented insufficient evidence to demonstrate that they are necessary for a minimal standard of living. The most significant of these is the total of $517.00 per month in medical and dental expenses listed in her budget. Although Dr. Jeffrey Chambers testified regarding the cost of psychological treatment, Dr. Chambers is not currently treating the Plaintiff. Nor was there any credible evidence of any other psychological or psychiatric treatment being provided at this time. Hence, the evidence did not substantiate any ongoing medical expenses for such treatment. Similarly, the Plaintiff failed to demonstrate that she currently requires

treatment for tendinitis or that she currently is incurring medical expenses related to tendinitis. The Plaintiff presented various receipts for medical treatment and prescription drugs, but she presented no credible, competent evidence regarding the necessity for such expenses or whether such expenses were ongoing. For example, Dr. Barrie actually amended her affidavit to clarify that although the Plaintiff's tendinitis symptoms have recurred in the past, it is possible that they will not return. Although Plaintiff testified regarding various alleged medical problems, including depression and tendinitis, and regarding medical treatment and expenses, her testimony in that regard was unconvincing and not credible and was insufficient to establish that Plaintiff has been paying medical expenses of $517.00 per month or is likely to have that level of medical expenses in the future. Because of the lack of credible evidence as to necessity or amount, the Plaintiff's alleged medical expenses must be eliminated from her budget.

Another expense that can be eliminated from her budget based on insufficient evidence is the $125.00 per month which Plaintiff allocates to the care of her mother. No evidence was presented as to her mother's financial resources or lack thereof nor was it clear exactly how much plaintiff actually has contributed to her mother's care. More importantly, the amounts which Plaintiff voluntarily contributes to her mother are not properly treated as a part of Plaintiff's minimal living expenses in determining whether she has the ability to repay her educational loan for purposes of § 523(a)(8).

Another item which should be eliminated from Plaintiff's budget is the expense of $100.00 per month for "miscellaneous unpredictable expenses." The Plaintiff testi-

fied that this item was included as a result of the ice storm of the winter of 2002. Specifically, the Plaintiff apparently incurred the unexpected expenses of staying in a hotel for a week due to a power outage in her home and replacing her television set, which was damaged by an electrical surge. Testimony about events that happened almost two years ago and which are not regularly recurring expenses is not probative of the Plaintiff's current, necessary expenses.

Another alleged expense which must be eliminated from the Plaintiff's budget based on insufficient evidence is the $200.00 per month in charitable contributions to the church at which her father is the pastor. As previously noted, the courts are split as to whether religious contributions are proper expenses in the context of the undue hardship inquiry under § 523(a)(8). Here, however, the court need not reach this substantive issue because the Plaintiff has presented insufficient competent evidence to substantiate a current charitable contribution of $200.00 per month. The Plaintiff presented a computer printout showing that she contributed a total of $1,395.00 to Apex First Baptist Church in 2002, which at best supports a monthly charitable contribution of about $100.00 per month. However, the Plaintiff presented no credible evidence of charitable contributions during 2003 or 2004. Evidence of charitable contributions made during 2002 is not probative of the existence or amount of any current monthly tithe. The charitable contribution item must therefore be eliminated from the Plaintiff's budget in its entirety.

■ There are several other expenses which must be eliminated from Plaintiff's budget because they are simply inconsistent with a minimal standard of living. Specifically, the Plaintiff's budget includes monthly expenses of $56.00 for "home

maintenance" of the apartment in which the Plaintiff lives; $250.00 in savings for a new car; $30.00 for recreation, which the Plaintiff testified consisted of charges for magazine subscriptions and movies; $45.00 for basic cable, which the Plaintiff testified was necessary for a minimal standard of living because of its "calming" effect; $10.00 for hobbies; $20.00 for special occasions, which the Plaintiff testified included purchasing drinks for others; $20.00 for gifts and related travel, which the Plaintiff testified consists of purchasing flowers or other gifts for events such as weddings and funerals and traveling to and from such events; $5.00 in miscellaneous business services and supplies; $30.00 for vacations; $40.00 for high-speed internet, which the Plaintiff testified was necessary to a minimal standard of living to avoid an "unstable connection"; $60.00 in lawsuit related expenses; $30.00 for inkjet cartridges; $42.00 in savings for a new computer; and $35.00 in savings for a new sewing machine. Despite the Plaintiff's insistence to the contrary, these expenses are not necessary in order for the Plaintiff to maintain a minimum standard of living.

The Plaintiff also included a monthly expense of $100.00 for payments to the IRS on outstanding taxes. She admitted, however, that the current balance owed to the IRS is only $425.00. In a few months, the Plaintiff will no longer have this expense. Although the Plaintiff testified that she owed additional taxes to the IRS, she presented no credible evidence to substantiate any additional taxes.

After eliminating the alleged expenses which the Plaintiff failed to substantiate as being necessary for a minimal standard of living, the monthly expenses alleged by Plaintiff go from $4,730.00 to $1,615.00 (which does not reflect any reduction based upon the excessive rent being paid by Plaintiff). Additionally, when the

Plaintiff's payment plan with the IRS is complete in four months, her monthly expenses will be further reduced to $1,515.00. As noted earlier, the elimination of Plaintiff's 401(k) contribution increases Plaintiff's net monthly income to $2,422.14. Subtracting the adjusted monthly expenses of $1,515.00 from Plaintiff's net monthly income of $2,422.14 leaves a positive monthly cash flow of $907.14. Thus, according to the greater weight of the evidence in this case, if Plaintiff's expenses are reduced to the expenses actually required to maintain a minimal standard of living, the Plaintiff is left with $907.00 per month of disposable income which is available for the repayment of the PHEAA indebtedness. With this figure in mind, the court must decide whether the Plaintiff has satisfied the first prong of the *Brunner* test under which she is required to show by a preponderance of the evidence that she would be unable to maintain a minimal standard of living if required to repay the PHEAA indebtedness. Having received and evaluated the credibility and weight of the evidence offered by the parties, the court concludes that the Plaintiff has failed to make such a showing and hence has failed to satisfy the first prong of the *Brunner* test.

C. Debtor has failed to demonstrate additional circumstances indicating that an inability to pay is likely to persist over a significant portion of the loan repayment period.

 The second prong of the *Brunner* test requires a showing that additional circumstances exist which indicate that an inability to pay is likely to persist over a significant portion of the loan repayment period. A discharge of educational loans under § 523(a)(8) must be based not simply upon a present inability to pay, but rather upon a certainty of hopelessness that the plaintiff will ever be able to pay.

*In re Goulet,* 284 F.3d 773, 778 (7th Cir. 2002); *In re Brightful,* 267 F.3d 324, 328 (3d Cir.2001). *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir.1993); *In re Murphy,* 305 B.R. 780, 797 (Bankr.E.D.Va.2004). Examples of "additional circumstances" that sometimes satisfy the second prong of the *Brunner* test include medical problems, lack of usable job skills or severely limited education, or large numbers of dependents. *See Roberson,* 999 F.2d at 1137. It is well established, however, that a debtor's medical or psychological condition will not constitute additional circumstances for purposes of the *Brunner* undue hardship inquiry unless it impairs her ability to work. *See Goulet,* 284 F.3d at 779 (holding that debtor's substance abuse issues did not constitute additional circumstances under the second prong of the *Brunner* test where they did not impair his ability to work); *Brightful,* 267 F.3d at 330 (finding no record basis for the bankruptcy court's conclusion that debtor's psychiatric problems, which included two suicide attempts, constituted additional circumstances under the *Brunner* test where debtor failed to demonstrate that they impaired her ability to work); *In re McClain,* 272 B.R. 42, 48 (Bankr.D.N.H. 2002) (finding that debtor's depression, which had manifested itself through two suicide attempts, did not satisfy the second element of the *Brunner* test where he had been steadily employed for the last three years); *In re Hatfield,* 257 B.R. 575, 582 (Bankr.D.Mont.2000) (holding that debtor's "chronic depression" did not satisfy the second prong of the *Brunner* test where her doctor also testified that she was functioning well at work); *In re Brunner,* 46 B.R. 752, 757 (S.D.N.Y.1985) (reversing the bankruptcy court's finding of dischargeability where the record contained no evidence that debtor's depression and anxiety impaired her capacity to work;

"[Debtor] has no 'impairment' in any relevant sense of the word."). *Cf. In re Pena,* 155 F.3d 1108, 1113–14 (holding that debtor's mental condition, "variously diagnosed as depression, manic depression (bipolar disorder), schizophrenia and paranoia," which the record demonstrated had prevented her from holding any one job for longer than six months to a year, impaired her ability to work and thus satisfied the second prong of the *Brunner* test).

As discussed above, the Plaintiff has the present ability to make payments on her educational loans and maintain a minimal standard of living. The record reflects no additional circumstances to suggest that Plaintiff's ability to do so is likely to become unavailable over a significant portion of the loan repayment period. The Plaintiff is single with no dependents. She is well educated, having obtained both an undergraduate degree and a law degree. Although she has never become a licensed attorney, the Plaintiff has amassed several years of experience as a paralegal and therefore does not lack marketable job skills. Most importantly, the Plaintiff has been employed as the lead litigation paralegal at Olive & Olive since September of 2001. Her current annual salary is $37,000.00. The stipulation regarding the trial testimony of her employer, Susan Freya Olive, reflects that the Plaintiff is meeting or exceeding expectations in her current position; indeed, she has received a raise from $33,000.00 to $37,000.00 since the filing of her Chapter 7 petition based at least in part on good performance. There is no evidence in the record to suggest that the Plaintiff will not continue to experience success at her current position and attendant pay raises.

 The Plaintiff's anxiety and depression do not impair her ability to work and therefore cannot be considered as additional circumstances for purposes of the second element of the *Brunner* test. The record reflects that the Plaintiff's mental and emotional conditions will likely prevent her from ever passing the bar exam and becoming an attorney; however, they have clearly not impaired her ability to work and succeed as a paralegal. The Plaintiff presented even less evidence to suggest that her tendinitis impairs her ability to work. Because she not only has failed to establish a present inability to pay, but also has failed to demonstrate any additional circumstances reflecting that an inability to pay is likely to arise in the future and persist over the period of repayment, the Plaintiff has failed to satisfy the second prong of the *Brunner* test.

D. **The Plaintiff has not made a good faith effort to repay her educational loan.**

 The third and final prong of the *Brunner* test for undue hardship requires a showing that the Plaintiff has made a good faith effort to repay her student loans. This inquiry, like the determination required under the first prong of the *Brunner* test, is measured by the debtor's efforts to obtain employment, maximize her income and minimize her expenses. *In re Goulet,* 284 F.3d 773, 779 (7th Cir.2002); *In re Roberson,* 999 F.2d 1132 (7th Cir.1993); *In re Murphy,* 305 B.R. 780, 798 (Bankr.E.D.Va.2004). Another important consideration is "whether the debtor actually made any payments, and if so, the total amount of the payments." *Murphy,* 305 B.R. at 798–99 (finding that debtor had not made a good faith effort to repay her educational loans where she had negotiated forbearances and deferments but had never a payment). *See also In re McClain,* 272 B.R. 42, 48–49 (Bankr.D.N.H.2002) (finding that debtor had failed to establish a good faith effort to repay where he had made only three payments totaling $300.00 on his loans). *Cf. In re Pincus,* 280 B.R. 303, 316–17 (Bankr. S.D.N.Y.2002) (finding a good faith effort

to repay where the debtor had made 22 payments totaling $10,000.00 on his student loans and had continued making payments up until one month before he filed his Chapter 7 petition). However, failure to make payments will not preclude a finding of good faith if the debtor had no funds available for payment toward the loan. *Murphy,* 305 B.R. at 798–99; *In re Fuller,* 296 B.R. 813, 819 (Bankr.N.D.Cal.2003) (finding that debtor had failed to establish a good faith effort to pay his roughly $240,000.00 in student loan debt where he made only a few payments toward that debt but had the ability to make more, as evidenced by the fact that he continually made payments on his credit card debt).

■ As discussed above, the Plaintiff has not minimized her expenses. Even more probative of the Plaintiff's lack of good faith effort to repay, however, is the fact that she did not make payments on the loan when she had the ability to do so. The Plaintiff's resume reflects that she has been steadily employed since she graduated from law school.[1] Her income has fluctuated, but the Plaintiff's tax returns reflect income of at least $30,000.00 for five of the last ten years.[2] Throughout the period since her graduation from law school, the Plaintiff has been single and without any dependents to support. Despite her steady employment and ample salary, the Plaintiff has made only one payment of $100.00 in the ten years since she graduated from law school.

The record reflects that the Plaintiff has had the ability over the years to make regular payments on her educational loan indebtedness. Plaintiff simply chose not to do so. By obtaining six forbearances and declining to pay even the interest during such forbearances, the Plaintiff unnecessarily increased her indebtedness. The Plaintiff admitted that she could have made some payments during the forbearance periods but that she chose not to, despite having been advised that any unpaid accrued interest would be capitalized. Plaintiff elected to pay other obligations and expenses rather than make payments on the PHEAA indebtedness. For example, Plaintiff testified that she paid $2,000.00 in order to settle her debts with credit card companies at a time when she was paying nothing to PHEAA. These funds could have been paid toward her educational loan. Plaintiff also testified that she had the ability to make partial payments toward her loan, but that she chose not to because she believed default was inevitable. Plaintiff's correspondence with PHEAA does not reflect a good faith effort to arrive at a repayment arrangement. Instead, it appears that Plaintiff sought to create disputes and excuses for not making payments, that she had no true intentions of repaying her educational loan obligations to the Defendant and that she has taken advantage of every possible opportunity to avoid doing so. Given the Plaintiff's consistent failure to minimize her expenses, her continuing lack of good faith effort to make payments to PHEAA and her record of having made only a single payment of $100.00 over a ten year period during which she had the ability to make regular, substantial payments to PHEAA, the court is satisfied that the Plaintiff has not make a good faith effort to repay her educational loan indebtedness

---

1. The Plaintiff was not permanently employed from January to March of 2001 or January to March of 1998, but her resume reflects that she worked for temporary agencies during these periods. Thus the only periods of unemployment reflected by the Plaintiff's resume are August and September of 1994.

2. The Plaintiff reported income of $32,562.30 in 1995; $35,092.62 in 1996; $39,390.71 in 1997; $30,313.76 in 2002; and $31,767.25 in 2003.

to PHEAA. The Plaintiff thus fails the third prong of the *Brunner* test.

## CONCLUSION

The Plaintiff has failed to meet her burden with respect to all three prongs of the *Brunner* test and has therefore failed to establish that requiring her to repay her educational loans would impose an undue hardship upon her. The Plaintiff's educational loan indebtedness therefore is nondischargeable under § 523(a)(8) of the Bankruptcy Code. A judgment so providing shall be entered contemporaneously with the filing of this memorandum opinion.

## *JUDGMENT*

In accordance with the memorandum opinion filed contemporaneously herewith, it is ORDERED, ADJUDGED AND DECREED that the indebtedness referred to in Plaintiff's complaint which is owed to the Defendant by the Plaintiff is nondischargeable pursuant to § 523(a)(8) of the Bankruptcy Code.